**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**5:23-ʙᴋ-70907**
**Cʜᴀᴘᴛᴇʀ 11**

IN RE:          Rᴀᴘɪᴅ P&P LLC,          Dᴇʙᴛᴏʀ ɪɴ Pᴏssᴇssɪᴏɴ

**Dɪsᴄʟᴏsᴜʀᴇ Sᴛᴀᴛᴇᴍᴇɴᴛ ᴏғ Rᴀᴘɪᴅ P&P, LLC ᴅᴀᴛᴇᴅ:**

**12ᴛʜ Mᴀʀᴄʜ 2024**

I.      **Introduction**

This is the disclosure statement (the Disclosure Statement) in the Chapter 11 case of Rapid P&P, LLC (the Debtor, or Rapid). This Disclosure Statement provides information about the Debtor and the Plan filed on the same date as this Disclosure Statement to help you decide how to vote.

A copy of the Plan is attached as *Exhibit A*. **Your rights may be affected**. You should read the Plan and this Disclosure Statement carefully. You may wish to consult an attorney about your rights and your treatment under the Plan.

The proposed distributions under the Plan are discussed in this Disclosure Statement. General unsecured creditors are classified in Classes 6 and 7 and will receive a distribution of 100% of their allowed claims.

A.      **Purpose of This Document**

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,

How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

Who can vote on or object to the Plan,

What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.    This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed,

establish your rights.

**B.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing, And Pre-Deadline Disclosure Statement and Pre-Confirmation Meeting**

The Court has not yet confirmed the Plan described in this Disclosure Statement. The Plan is thus not available for objections nor balloting. This Disclosure Statement must be approved before the Plan is available for objections or balloting.

This Disclosure Statement is distributed with a Notice of Opportunity to Object ("Notice"). The time period in the Notice is 28 days pursuant to Rule 2002(b) of the Federal Rules of Bankruptcy Procedure.

If you have an objection to the Disclosure Statement, you should note well the 28-day period and file any objection you may have during that 28-day period.

If you want additional information about the Plan, you should contact the Debtor's legal counsel as follows:

| **By Post:** | **By Telephone:** | **By Email:** |
|---|---|---|
| Stanley Bond | 479-444-0255 | attybond@me.com |
| PO Box 1893 | | |
| Fayetteville, AR 72702 | | |

Creditors desiring additional non-proprietary economic data may request from Debtor's legal counsel such data on or before 12 o'clock Noon prevailing central time on Monday, 1st April 2024.

A pre-confirmation meeting will be convened in an effort to address any objections to confirmation short of litigation, and such meeting will take place 14-days after the Plan is proposed for balloting, and will be stated in a subsequent notice distributed to all creditors.

**C.**     **Disclaimer**

**The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.**

## II.     Background

### A. Description and History of the Debtor's Business

The Debtor is a limited liability company organized under the laws of the State of Arkansas. Since 2006, the Debtor has been in the business of designing, developing, and producing custom packaging solutions for various products.

### B. Insiders of the Debtor

The Debtor is owned by its two members, Kyle Jack and Kelly Jack. Kyle Jack is the managing member of the LLC. Kyle Jack owns 74% of the member interests in the LLC, and Kelly jack owns 24% of the member interests of the LLC.

In the two years before the commencement of the Debtor's case, and post-petition, compensation was paid as follows:

|            | 2021    | 2022    | 2023    | 2024    |
|------------|---------|---------|---------|---------|
| Kyle Jack  | 100,000 | 120,577 | 121,154 | 126,000 |
| Kelly Jack | 100,000 | 120,577 | 121,154 | 126,000 |

### C. Management of the Debtor Before and During the Bankruptcy

List the name and position of all current officers, directors, managing members, or other persons in control (collectively the *Management*) who will not have a position post-confirmation that you list in III D 2.

| Name      | Position                   |
|-----------|----------------------------|
| Kyle Jack | Managing Member and CEO    |

### D. Events Leading to Chapter 11 Filing

The global Covid-19 pandemic directly and immediately impacted Rapid's operations and income. Rapid chose to continue in business and in order to provide capital for operations, Rapid entered into numerous lending agreements to obtain Merchant Capital Advance loans ("MCA") to meet operational needs. The balance of the MCA related debt and the payments concomitantly due on such MCA loans could not be met by Rapid because Rapid's income had not recovered sufficiently post-pandemic such that defaults in payments for the MCA's were occurring or were imminent. Rapid's management determined that reorganizing Rapid's debt was in Rapid's best interests and in the best interests of all of Rapid's creditors.

### E. Significant Events During the Bankruptcy Case

Rapid first filed under the provisions of Subchapter V of Chapter 11, but the Subchapter V election was later revoked and Rapid has proceeded under the standard provisions of Chapter 11.

Rapid has entered into numerous adequate protection agreements with secured creditors, and Rapid was granted use of its cash collateral subject to an adequate protection scheme.

### F. Projected Recovery of Avoidable Transfers

The Debtor has not yet completed its investigation with regard to prepetition transactions.   If you received a payment or other transfer within 90 days of the bankruptcy or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. Disputed claims are treated in Article 5 of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in *Exhibit B*.   The basis of such values is stated in the exhibit.

The Debtor's pre-petition financial statements are filed with the Court, and are set forth in *Exhibit C*.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in *Exhibit D*.

## III. Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B. Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Therefore, the Plan Proponent has *not* placed the following claims in any class:

**1. Administrative expenses, involuntary gap claims, and quarterly and Court fees**
Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 503(b) of the Code. Administrative expenses include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition, and compensation for services and reimbursement of expenses awarded by the court under §330(a) of the Code. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed under § 502(f) of the Code are entitled to the same treatment as administrative expense claims. The Code also requires that fees owed under section 1930 of title 28, including quarterly and court fees, have been paid or will be paid on the effective date of the Plan.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative expenses | $20,000.00 | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Involuntary gap claims | $00.00 | Paid in full on the effective date of the Plan, unless the holder of a particular claim has agreed to different treatment |
| Statutory Court fees | $00.00 | Paid in full on the effective date of the Plan |
| Statutory quarterly fees | $5,000.00 | Paid in full on the effective date of the Plan |
| **Total** | **$25,000.00** | |

### 2. Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. §511, in regular installments paid over a period not exceeding 5 years from the order of relief. The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

**Claim 26.**       United States-Internal Revenue Service

```
Amount of Claim:     $442.72
Amount Priority:     $442.72
Payment Interval:    One-time
Payment Period:      N/A
Interest Rate: N/A


Resulting Payment:   $442.72
```

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

#### 1. Classes of secured claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

**CLASS 1A.**       **Secured Claim 17** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

```
Impairment:          Impaired.
Date of
Obligation:          2019-09-15
Date of
```

```
Maturity:        2024-09-12
Collateral:      All inventory and all accounts
Amount of Claim:   $149,595.61
Amount Secured:    $149,595.61
Payment Interval:  Monthly
Payment Period:    36 Months from 2024-09-12¹
Interest Rate: 6%


Resulting Payment: $2,892.10
```

**CLASS 1B.**    **Secured Claim 18** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

```
Impairment:         Impaired.
Date of
Obligation:         2023-01-30
Date of
Maturity:        2023-12-15
Collateral:      All inventory and all accounts;
                 all real estate; assignment of
                 rents.
Amount of Claim:   $371,663.53
Amount Secured:    $371,663.53
Payment Interval:  Monthly
Payment Period:    36 Months from 2024-02-01
Amortization
Period:        20 years
Interest Rate: 6%
Resulting
Payment:       $2,662.72
Balloon:       $342,684.19
```

**CLASS 1C.**    **Secured Claim 19** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

---

1  The adequate protection scheme per the Order for Adequate Protection [Document 37] will endure in the interim between the Effective Date and 21st August 2024.

```
Impairment:          Impaired.
Date of
Obligation:          2017-09-15
Date of
Maturity:    2037-09-15
Collateral:          1293 N Oriole Ave., Rogers, AR;
                     and 3945 and 3999 Rosebud Lane,
                     Springdale (formerly Bethel
                     Heights), AR
Amount of Claim:     $259,491.43
Amount Secured:      $259,491.43
Payment Interval:    Monthly
Payment Period:      163 Months, 14 days
Interest Rate: 5% fixed.


Resulting Payment:  $2,098.96

    Sum of Claims 17, 18, and 19: $780,750.57
```

---

    The several Resulting Payments set forth in the treatments of Class 1A, Class 1B, and Class 1C (collectively the "United Bank Claims") are the amortized payments for each such claim, but the extent of the liens of the United Bank Claims being secured by the Debtor's receivables and accounts fully secure the United Bank Claims and the Debtor shall pay United Bank on account of its claims the amounts set out in the Agreed Order entered as Document 130 on 6th December 2023.

**Class 2.**      Secured claim of **Flagstar Financial & Leasing LLC**2  **(Claim 16)**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code.

```
Impairment:          Impaired.
Date of
Obligation:          2021-03-17
```

---

2  Formerly known as Signature Financial LLC.

```
Date of
Maturity:        2023-12-15
Collateral:   Durst RHO P5-350 Hybrid Printer
Amount of Claim:     $332,348.84
Amount Secured:      $90,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate: 6%

Resulting Payment:   $1,739.95
```

---

**Class 3.**          Secured claim of **US Bank NA d/b/a US Bank Equipment Finance**3 **(Claim 15)**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code.

```
Impairment:          Impaired.
Date of
Obligation:          2021-09-24
Date of
Maturity:        2026-09-24
Collateral:   AGFA Jeti Tauro H2500 6C W8 LED
              Printer
Amount of Claim:     $432,256.00
Amount Secured:      $200,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate: 6%

Resulting Payment:   $3,866.56
```

---

**Class 4.**          The secured claim of **Highland Capital Corporation**4  **(Claim 6)**, the extent allowed as a secured claim under §506 of the Bankruptcy Code.

---

3  Formerly known as ENGS Commercial Finance Co.
4  Formerly known as Great Atlantic Finance Corporation.

```
Impairment:          Impaired.
Date of
Obligation:          2021-01-07
Date of
Maturity:       2026-09-24
Collateral:          Kongsberg C64
Amount of Claim:     $182,528.00
Amount Secured:      $100,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate: 6.00%


Resulting Payment:   $1,933.28
```

**Class 5.**     Secured claim of **<u>Midland States Bank</u>**5  **(Claim 27)**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code.

```
Impairment:          Impaired.
Date of
Obligation:          2021-08-12
Date of
Maturity:       2026-12-04
Collateral:          2017 Highcon Eucluld 5C Digital
                     Cutting & Creasing Machine
Amount of Claim:     $385,886.00
Amount Secured:      $320,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate: 6%


Resulting Payment:   $6,186.50
```

---

5  Formerly Liberty Capital Group, Inc.

### 2. Classes of priority unsecured claims

The Code requires that, with respect to a class of claims of a kind referred to in §§ 507(a)(1), (4), (5), (6), and (7), each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim, unless a particular claimant agrees to a different treatment or the class agrees to deferred cash payments.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

> *None.*

### 3. Classes of general unsecured claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class[es] **6 and 7** which contain general unsecured claims against the Debtor:

**Class 6.**          The claims of this class are:

```
a.   Fundamental Capital (Claim 2)
b.   Clearstone Fund LLC (Claim 3)
c.   Breakout Capital LLC (Claim 10)
d.   Prime Advance LLC (Claim 20)
e.   Yes Capital Group LLC (Claim 21)
f.   Unique Funding Solutions, LLC (Claim 25)
```

Each of the claims in Class 6 is filed as a secured claim.

Each of these claims in Class 6 purports to be secured by the Debtor's accounts and receivables.

Each of the claims in Class 6 arose after the claims of Class 1A, 1B, and 1C.

The claims of Class 1A, 1B, and 1C are superior to those of all claims in Class 6, and notice of the claims of Class 1A, 1B, and 1C appeared in the public record prior to the existence of all claims of Class 6.

Therefore, all claims of Class 6 have no equity or value to attach to and are entirely unsecured.

Confirmation of this Plan will void, avoid, and render as a

nullity all security agreements, notices, liens, and any other
type or kind of encumbrance created by the Debtor's obligations
to any claim of Class 6, and the claims of Class 6 shall be
treated pursuant to Class 7 of this Plan.

References to Class 6 for distribution purposes is referred
to in references to Class 7.

The sum of the claims of this class are $1,866,309.91.

**Class 7.**        General, Unsecured Claims

The claims of this class are unsecured or are the unsecured
portions of secured claims in Class 6.

This class of claims is impaired.

The claims of this class total approximately **$3,837,773.40**
**including the claims of Class 6 and the unsecured portions of**
**secured claims estimated to be $621,000.00**.

This class will be paid in annual *pro rata* installments, and no
interest will accrue on the claims of this class.

Payment to this class will be made annually for the length
of the Plan.  Payment will be made on the anniversary date of
the Effective Date of this Plan as defined herein.

Payments to this class shall be pro rata.  The annual
funding for payments to this class of claims is 5% of gross
receipts each year of the Plan.  The accompanying Disclosure
Statement contains projections of gross receipts.

The Debtor may apply to distributions to Class 7 the
payments otherwise payable to classes of secured claims once a
secured class is paid the full amount if its secured claim. A
projection of these additional payments is in the Disclosure
Statement.

**4. Classes of equity interest holders**

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company (LLC), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

Rapid's equity ownership interest holders, Kyle Jack, and Kelly Jack, will retain their ownership interests in Rapid in the same proportions of ownership as of the date of commencement, but neither shall have economic rights to exercise until all classes of claims under the Plan are paid in full according to the treatment of each respective class of claims.

## D. Means of Implementing the Plan

### 1. Source of payments

Payments and distributions under the Plan will be funded by the following:

The continued operation of the Debtor's business, capital provided from time to time by the Debtor's principals, and asset sales subject to valid and perfected liens.

### 2. Post-confirmation Management

The Post-Confirmation Management of the Debtor (including officers, directors, managing members, and other persons in control), and their compensation, shall be as follows:

| Name | Position | Compensation |
|------|----------|--------------|
| Kyle Jack | Managing Member | 126,000.00 |
| Kelly Jack | Officer | 126,000.00 |

## E. Risk Factors

The proposed Plan has the following risks:

National economic collapse, civil war, other war declared or undeclared, natural disaster, and *force majeure*.

**F. Executory Contracts and Unexpired Leases**

The Plan in Article 6 lists all executory contracts and unexpired leases that the Debtor will assume, and if applicable assign, under the Plan. *Assumption* means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article 6 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption, and if applicable the assignment, of your unexpired lease or executory contract under the Plan, the proposed cure of any defaults, the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 or have not previously been assumed, and if applicable assigned, or are not the subject of a pending motion to assume, and if applicable assign, will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**The deadline for filing a Proof of Claim based on a claim arising from the rejection of a lease or contract is <u>60 days after the order of confirmation of the Plan</u>.**

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**G. Tax Consequences of Plan**

**Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

It is anticipated that the confirmation of the Plan will have no material impact on the Debtor's general tax basis or characteristics, but ad valorem taxes may be reduced due to the reduced value of the Debtor's personal property in the form of equipment.

Secured creditors who may have collateral valued less than the amount of their claim may be able to report losses, and for all creditors the receipt pf payments may be includible in the reporting of their respective incomes.

**IV. Confirmation Requirements and Procedures**

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code. These include the requirements that:

- the Plan must be proposed in good faith;

- if a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

- the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

- the Plan must be feasible.

These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A. Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both

(1) allowed or allowed for voting purposes and

(2) impaired.

In this case, the Plan Proponent believes that classes all classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

**1. What is an allowed claim or an allowed equity interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either

(1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

(2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was <u>28th September 2023</u>.**

**2. What is an impaired claim or impaired equity interest?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.    As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**3. Who is not entitled to vote**

The holders of the following five types of claims and equity interests are *not* entitled to vote:

holders of claims and equity interests that have been disallowed by an order of the Court;

holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

holders of claims or equity interests in unimpaired classes;

holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan and to the adequacy of the Disclosure Statement.**

**4. Who can vote in more than one class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1) all impaired classes have voted to accept the Plan; or

(2) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section B.2.

#### 1. Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1) the holders of more than 1/2 of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2) the holders of at least 2/3 in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least 2/3 in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

#### 2. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as *Exhibit E*.

**D. Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1. Ability to initially fund plan

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

### 2. Ability to make future plan payments and operate without further reorganization

-The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.
-The Plan Proponent has provided projected financial information. Those projections are listed in *Exhibit G*.
-The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $**627,492.00**.
-The final Plan payment is expected to be paid on or before Friday, December 11, 2037.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## V. Effect of Confirmation of Plan

### A.    Discharge of Debtor

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

(i)                imposed by the Plan, or

(ii)               to the extent provided in U.S.C. § 1141(d)(6).

_____

## B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if

(1) the Plan has not been substantially consummated and

(2) the Court authorizes the proposed modifications after notice and a hearing.

## C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.    Alternatively, the Court may enter such a final decree on its own motion.

## VI.        Other Plan Provisions

**These provisions appear in Article X of the Plan:**

**A.    Salaries:** The monthly draw to be paid for management of the Debtor's business and operational affairs during the period of reorganization are as follows:

**Kyle Jack**

**B.    Disputed Claims Reserve:** On or before the Effective Date the Debtor shall establish the Reserve Account.  The Reserve Account shall be at a federally insured banking institution and shall be an interest-bearing account, and otherwise subject to the provision of 11 USC §345.  The interest earned on said account shall be property of the Debtor.  The account shall not be at any bank or financial institution that is a creditor of the Debtor.

**C.**    Disputed Claim is a claim that has not been allowed or disallowed by final order and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled as

disputed, contingent or unliquidated in its schedules or as set forth in this Plan.  In the event of Disputed Claims for which an Final Allowed Claim is not yet determined on the Effective Date, the Debtor shall deposit any money to be distributed to such creditor with a Disputed Claim into the Reserve Account until such time as any such creditor has a Final Allowed Claim at which time the Debtor will make the distribution to the creditor.

The Debtor reserves the right to object to any claim.

**D.    Continued Employment of Professionals:** Bond Law Office and its associated attorneys, the court-approved attorney for the Debtor, will continue serving in that capacity pursuant to the order approving his employment.

For the approved attorney, prior to the entry of a Final Decree and closing of the case, compensation may be applied for pursuant to §330.

From time to time, the Debtor may require the assistance of additional professionals during reorganization.  If the case is not closed, the Debtor will seek Bankruptcy Court approval of the hiring of any such professional.

**E.    Deadline for Filing Claims:** The Debtor asked for a deadline to the filing of claims.  That date was **Thursday, 28th September 2023** with an additional time allowed for the claims of taxing authorities of local, state, and federal government agencies.

**F.    Withholding of Small Distributions:** The Debtor may, in its sole discretion, withhold distributions to any claim until the distribution to a claimant is at least $200.00.

**G. Identification of the Collateral of Secured Classes**
The identification of collateral listed below is the collateral for each respective class of secured claims.

Classes 1A, 1B, and 1C:

-All inventory and all accounts; whether any of the foregoing is owned now or later acquired; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing
- Lot 19, Block 21, Whispering Timbers, Phase 12, to the City

of Rogers, Benton County, Arkansas, as shown in Plat Book 23L
at page 232.
- Lots 11 and 14, Courtyard III Subdivision, Bethel Heights,
Benton County, Arkansas, as shown on Plat Record 2005-519.
- Assignment of Rents

Class 2:

Durst RHO P5-350 Hybrid Printer

Class 3:

AGFA Jeti Tauro H2500 6C W8 LED Printer

Class 4:

Kongsberg C64

Class 5:

2017 Highcon Eucluld 5C Digital Cutting & Creasing Machine

**H.     Debtor and Estate Causes of Action**

Post-petition, and recently, the Debtor has become aware
that some customers of the Debtor have continued to pay Debtor
receivables to disputed creditors listed in the Debtor's first
filed Schedule D to its Voluntary Petition.  These payments
represent post-petition preferences to otherwise unsecured
creditors.

The Debtor reserves its rights to pursue recovery of these
post-petition preferences, and any pre-petition preferences, or
to sell its rights to pursue such causes of action against a
payor or payee, upon appropriate motion, notice and order of the
Bankruptcy Court, or any other court of competent jurisdiction
to adjudicate such claims.

Confirmation of this Plan will vest in the Debtor all such
causes of action.

**I.     Debtor's Members Enjoined from Exercising Economic Interests in Debtor LLC.**

The two members of the Debtor LLC are Kyle Jack, owning 74%
of the member interests, and Kelly Jack, owning 24% of the
member interests. Collectively, the term "Members" refers to

Kyle Jack and Kelly Jack, and any member admitted to membership in the LLC post-petition.

For the Plan Period, the Members are enjoined from receiving any economic benefits on account of their ownership interests in the LLC. Such economic benefits include payment of dividends, or capital distribution to Members or any one of them, on account of their member interests in the Debtor LLC.

The Operating Agreement of the Debtor LLC will be amended accordingly to include this provision in the Operating Agreement.

### J.   Debtor's Rights to Disposition of Assets Reserved

The Debtor reserves the right, in the business judgment of its management, to sell, mortgage, exchange, encumber, or undertake any other act or agreement Debtor's management determines is in the interest of the Debtor's ongoing operations and the Debtor's creditors whose payments are derived from the operation of the Debtor's business.

If the Debtor's bankruptcy case remains open at such time as management determines a disposition of any of the Debtor's assets, such disposition will be made by appropriate motion, notice. and order.

Liens of valid and perfected secured creditors determined by the Plan will be paid the full amount of their secured claim at the time the disposition transaction closes.

### K.   Additional Terms of Treatment of IRS Priority Claim (Claim 11):

a.   Debtor will file all necessary tax returns and make all payments to the IRS under this Plan to:

> Insolvency Section-Internal Revenue Service
> M/S 5024
> 55 North Robinson
> Oklahoma City, OK 73102

b.   The Debtor or the reorganized Debtor fails to make all payments on federal taxes, claims of the IRS, and administrative expense claims of the IRS, which are provided for in this Plan or order of confirmation, or any other event of default as provided in the Plan occurs, the IRS shall be entitled to give

the Debtor notice of the default and if the default has not been cured within thirty (30) days from the mailing of the written notice, the IRS shall have the following rights and the following provisions shall apply to the IRS:

    i.   The IRS shall have the right to declare due and payable any interest or penalties which would have accrued on the pre-petition tax liabilities of the Debtor but for the filing of the bankruptcy petition and if the Debtor fails to pay the interest and penalties then they may be asserted by the IRS;
    ii.  The pre-petition tax claims shall be treated as taxes owed by a non-debtor as if no bankruptcy has been filed and no plan had been confirmed;
    iii. The IRS shall have the right to proceed to collect from the Debtor or the reorganized Debtor any of the pre-petition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy had been filed and as if no plan  had been confirmed, and, such procedure shall include, but not limited to:
        (1)  The filing of notices of federal tax liens; and,
        (2)  Collection by levy as provided by IRS §6331 through 6344; and,
    iv.  The failure of the IRS to declare a default does not constitute a waiver of the IRS of the right to declare that the Debtor or reorganized Debtor is in default of the Plan or order of Confirmation.

**L.    Additional Terms of Treatment of State of Arkansas-Department of Finance & Administration:**

        Despite any other provision of this plan to the contrary, any failure by the Debtor to timely make any payment due under this plan, or to timely file and pay post-petition taxes shall constitute an event of default. In the event of Default, Creditor shall provide the Debtor and counsel with written notice of default and a fourteen (14) day opportunity to cure. Failure to cure the default within 14 days after notice of the default shall authorize Creditor to utilize all available remedies to collect the entire amount of unpaid taxes owed by the Debtor (including those provided for within this plan) without approval of the court and without further notice to the

Debtor or to the Debtor's counsel. The Debtor shall only be
permitted three (3) defaults under the terms of this plan. If a
fourth default occurs, Creditor shall be authorized to utilize
all available remedies to collect the entire amount of unpaid
taxes owed by the Debtor (including those provided for within
this plan) without approval of the Court and without further
notice to the Debtor or to the Debtor's counsel.

### M.     Retention of Properly Perfected Liens:

Confirmation of this Plan will confirm the perfection of
liens properly perfected pre-petition or provided by this Plan
post-petition. Any such liens will remain perfected throughout
the plan period until the Debtor has completed payments for the
respective lien claimant's claim to the extent the claim is
secured.

### N.     Vesting of Property & Effect of Confirmation.

The Reorganizing Debtor shall continue to hold title to the
assets in the bankruptcy estate, free and clear of all liens,
claims, encumbrances, and equity interests, except as
specifically provided in this Plan. Upon confirmation of this
Plan the property dealt with this Plan is free and clear of all
claims and interests of creditors and equity security holders of
the Debtor except as otherwise provided for herein.

Respectfully submitted.

**/s/ Kyle Jack**
Managing Member and CEO

**Exhibits**

**Exhibit A: Copy of Proposed Plan of Reorganization**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

IN RE:    RAPID P & P LLC                                          Case No.    **5:23-BK-70907**

DEBTOR IN POSSESSION                                          Chapter    **11**

**PLAN OF REORGANIZATION**

**ARTICLE I**
**SUMMARY**

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Rapid P & P LLC** (the "Debtor" or "Rapid" or "Reorganized Debtor") from funds presently on deposit in the estate, and from the future income of the Reorganized Debtor.

This Plan provides for seven (7) classes of secured claims, two (2) classes of unsecured claims, and one (1) class representing the interests in the Debtor. This Plan is a plan of reorganization.

This Plan also provides for the payment of **Administrative Claims** and **Priority Unsecured Claims**.

The Plan period of one hundred sixty-five (165) months commences on the Effective Date, defined as the first day of the first full month after confirmation of this Plan.

For all classes of secured claims, the payment due date to each such class is the 21st day of each month until the class paid the full amount of its secured claim.

All creditors, equity security holders, and the Debtor should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan is being circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.01**  All allowed claims entitled to priority under §507 of the Code, except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8). This class of claims does not vote.

1

2.02   <u>Secured Classes</u>:        The claims of the creditors named below to the extent allowed as a secured claim under §506 of the Code.  All secured classes are impaired under this Plan:

```
Class 1A  United Bank (Claim 17)
Class 1B  United Bank (Claim 18)
Class 1C  United Bank (Claim 19)
Class 2   Flagstar Financial & Leasing LLC (Claim 16)
Class 3   US Bank d.b.a. US Bank Equipment Finance (Claim 15)
Class 4   Highland Capital Corporation (Claim 6)
Class 5   Midland States Bank (Claim 27)
```

See Addendum 2 to this Plan for the specific treatment of each such class.

2.02   <u>Unsecured Claims</u>:        All classes of unsecured claims are impaired and are as follows:

```
Class 6.  Claims  Filed  as  Secured  Claims  but  that  are
          Unsecured:

          a.   Fundamental Capital (Claim 2)
          b.   Clearstone Fund LLC (Claim 3)
          c.   Breakout Capital LLC (Claim 10)
          d.   Prime Advance LLC (Claim 20)
          e.   Yes Capital Group LLC (Claim 21)
          f.   Unique Funding Solutions, LLC (Claim 25)

Class 7.  General Unsecured Claims includes the claims of
Class 6, filed unsecured claims, and claims deemed filed by
operation of 11 USC §1111(a).
```

See Addendum 4 to this Plan for details of the treatments of these two classes of claims.

2.03   <u>Class 3</u>:        The interests of the equity holders of the Debtor. This class is impaired.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
<u>**U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS**</u>

3.01   <u>Unclassified Claims</u>: Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims</u>: Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims</u>: Each holder of a priority tax claim will be paid either at once, or in deferred cash payments with interest accruing at the rate required by law on the date of

| Class | Impairment | Treatment |
|---|---|---|
| **Secured Claims** | All are impaired. | For specific treatment of each class of secured claims, please refer to **Addendum 2** to this Plan. |
| **Non-priority, Unsecured Claims** | All are impaired. | For specific treatment of each class of secured claims, please refer to **Addendum 4** to this Plan. |
| **Equity Interests in the Debtor** | All are impaired. | The Debtor has two equity security holders, Kyle Jack, and Kelly Jack ("Members").  The Members shall continue to manage the Debtor's business and shall be paid a salary but shall receive no dividend or capital distribution on account of their equity.  See also Article X.*I*, below. |

confirmation as set out in Addendum 1 to the Plan.

**3.04**    United States Trustee Fees: All fees required to be paid by 28 USC §1930(a)(6) (U.S. Trustee Fees)  will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of     the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the   effective date.

3.05    Court Approved Attorney Fees: The Debtor's legal counsel will apply for compensation upon confirmation of this Plan.  Once such fees are finally approved such fees will be paid not less often than monthly over the term of the Plan until paid in full and the Debtor may pay such fees at any time after such fees are approved.  Any post-confirmation fees will be paid net thirty (30) days from invoice.

**ARTICLE IV**
**TREATMENT OF SECURED CLAIMS, GENERAL UNSECURED CLAIMS**
**AND INTERESTS UNDER THE PLAN**

**4.01**    Claims and interests shall be treated as follows under this Plan:

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01**    Disputed Claim: A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no

proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

The Debtor will additionally create a Disputed Claims Reserve as set forth in Article X of this Plan.

**5.02**   Delay of Distribution on a Disputed Claim: No distribution will be made on account of a disputed          claim unless such claim is allowed by a final non-appealable order.

**5.03**   Settlement of Disputed Claims: The Debtor will have the power and authority to settle and     compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules  of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01**   Assumed Executory Contracts and Unexpired Leases

**A.**   The Debtor rejects the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| **See Addendum 3, attached under the heading  "6.01A Rejections ".** | |

**B.**   The Debtor will be conclusively deemed to have assumed all executory contracts and/or unexpired leases designated under the heading "**6.01B Assumptions**" in Addendum 3 attached to this Plan or not expressly rejected under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **sixty** (**60**) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The payment of claims pursuant to this Plan shall be by the operation of the Debtor on the bases set forth in this Plan and any other legal means.  Kyle Jack will continue to be the principal manager and corporate officer for the Debtor.

## ARTICLE VIII
## GENERAL PROVISIONS

**8.01**   Definitions and Rules of Construction: The definitions and rules of construction set forth in §§ 101 and  102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and          they  are  supplemented  by  the  following  definitions:  [Insert additional

4

definitions if necessary].

**8.02** <u>Effective Date of Plan</u>: The effective date of this Plan is the first day of the first full month following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

**8.03** <u>Severability</u>: If any provision in this Plan is determined to be unenforceable, the determination will in  no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04** <u>Binding Effect</u>: The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05** <u>Captions</u>: The headings contained in this Plan are for convenience of reference only and do not affect  the meaning or interpretation of this Plan.

**8.06** <u>Controlling Effect</u>: Unless a rule of law or procedure is supplied by federal law (including the Code or   the Federal Rules of Bankruptcy Procedure), the laws of the State of **Arkansas** govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise           provided in this Plan.

**8.07** <u>Corporate Governance and Composition</u>: The Debtor entity will not change its corporate structure as a result of the confirmation of this Plan and governance will not change.


## ARTICLE IX
## DISCHARGE

**9.01** <u>Discharge</u>: Confirmation of this Plan will discharge any debt provided for in this Plan incurred through        the date of confirmation as provided in § 1141(d)(1) of the Code.  The Debtor will not be discharged          from any debt excepted from discharge under §523 of the Code, except as provided in Rule 4007(c) of  the Federal Rules of Bankruptcy Procedure.


## ARTICLE X
## <u>OTHER PROVISIONS</u>

**A.**    **Salaries:** The monthly draw to be paid for management of the Debtor's business and operational affairs during the period of reorganization are as follows:

**Kyle Jack**


**B.**    **Disputed Claims Reserve:** On or before the Effective Date the Debtor shall establish the Reserve Account.  The Reserve Account shall be at a federally insured banking institution and shall be an interest-bearing account, and otherwise subject to the provision of 11 USC §345.  The interest earned on said account shall be property of the Debtor.  The account shall not be at any bank or financial institution that is a creditor of the Debtor.

**C.**      Disputed Claim is a claim that has not been allowed or disallowed by final order and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled as disputed, contingent or unliquidated in its schedules or as set forth in this Plan.  In the event of Disputed Claims for which an Final Allowed Claim is not yet determined on the Effective Date, the Debtor shall deposit any money to be distributed to such creditor with a Disputed Claim into the Reserve Account until such time as any such creditor has a Final Allowed Claim at which time the Debtor will make the distribution to the creditor.

The Debtor reserves the right to object to any claim.

**D.      Continued Employment of Professionals:**   Bond Law Office and its associated attorneys, the court-approved attorney for the Debtor, will continue serving in that capacity pursuant to the order approving his employment.

For the approved attorney, prior to the entry of a Final Decree and closing of the case, compensation may be applied for pursuant to §330.

From time to time, the Debtor may require the assistance of additional professionals during reorganization.  If the case is not closed, the Debtor will seek Bankruptcy Court approval of the hiring of any such professional.

**E.      Deadline for Filing Claims:** The Debtor asked for a deadline to the filing of claims.  That date was **Thursday, 28th September 2023** with an additional time allowed for the claims of taxing authorities of local, state, and federal government agencies.

**F.      Withholding of Small Distributions:**  The Debtor may, in its sole discretion, withhold distributions to any claim until the distribution to a claimant is at least $200.00.

**G.      G. Tax Consequences of Plan**

**Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

It is anticipated that the confirmation of the Plan will have no material impact on the Debtor's general tax basis or characteristics, but ad valorem taxes may be reduced due to the reduced value of the Debtor's personal property in the form of equipment.

Secured creditors who may have collateral valued less than the amount of their claim may be able to report losses, and for all creditors the receipt pf payments may be includible in the reporting of their respective incomes.

### H.      Debtor and Estate Causes of Action

Post-petition, and recently, the Debtor has become aware that some customers of the Debtor have continued to pay Debtor receivables to disputed creditors listed in the Debtor's first filed Schedule D to its Voluntary Petition.  These payments represent post-petition preferences to otherwise unsecured creditors.

The Debtor reserves its rights to pursue recovery of these post-petition preferences, and any pre-petition preferences, or to sell its rights to pursue such causes of action against a payor or payee, upon appropriate motion, notice and order of the Bankruptcy Court, or any other court of competent jurisdiction to adjudicate such claims.

Confirmation of this Plan will vest in the Debtor all such causes of action.

### *I.*      **Debtor's Members Enjoined from Exercising Economic Interests in Debtor LLC.**

The two members of the Debtor LLC are Kyle Jack, owning 74% of the member interests, and Kelly Jack, owning 24% of the member interests. Collectively, the term "Members" refers to Kyle Jack and Kelly Jack, and any member admitted to membership in the LLC post-petition.

For the Plan Period, the Members are enjoined from receiving any economic benefits on account of their ownership interests in the LLC.  Such economic benefits include payment of dividends, or capital distribution to Members or any one of them, on account of their member interests in the Debtor LLC.

The Operating Agreement of the Debtor LLC will be amended accordingly to include this provision in the Operating Agreement.

### J.      Debtor's Rights to Disposition of Assets Reserved

The Debtor reserves the right, in the business judgment of its management, to sell, mortgage, exchange, encumber, or undertake any other act or agreement Debtor's management determines is in the interest of the Debtor's ongoing operations and the Debtor's creditors whose payments are derived from the operation of the Debtor's business.

If the Debtor's bankruptcy case remains open at such time as management determines a disposition of any of the Debtor's assets, such disposition will be made by appropriate motion, notice. and order.

Liens of valid and perfected secured creditors determined by the Plan will be paid the full amount of their secured claim at the time the disposition transaction closes.

### K.      Additional Terms of Treatment of IRS Priority Claim (Claim 11):

a.      Debtor will file all necessary tax returns and make all payments to the IRS under this Plan to:

> Insolvency Section-Internal Revenue Service
> M/S 5024
> 55 North Robinson
> Oklahoma City, OK 73102

b.      The Debtor or the reorganized Debtor fails to make all payments on federal taxes, claims of the IRS, and administrative expense claims of the IRS, which are provided for in this Plan or order of confirmation, or any other event of default as provided in the Plan occurs, the IRS shall be entitled to give the Debtor notice of the default and if the default has not been cured within thirty (30) days from the mailing of the written notice, the IRS shall have the following rights and the following provisions shall apply to the IRS:

> i.      The IRS shall have the right to declare due and payable any interest or penalties which would have accrued on the pre-petition tax liabilities of the Debtor but for the filing of the bankruptcy petition and if the Debtor fails to pay the interest and penalties then they may be asserted by the IRS;
> ii.      The pre-petition tax claims shall be treated as taxes owed by a non-debtor as if no bankruptcy has been filed and no plan had been confirmed;
> iii.      The IRS shall have the right to proceed to collect from the Debtor or the reorganized Debtor any of the pre-petition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy had been filed and as if no plan      had been confirmed, and, such procedure shall include, but not limited to:
>
>> (1)      The filing of notices of federal tax liens; and,
>> (2)      Collection by levy as provided by IRS §6331 through 6344; and,
>
> iv.      The failure of the IRS to declare a default does not constitute a waiver of the IRS of the right to declare that the Debtor or reorganized Debtor is in default of the Plan or order of Confirmation.

**L.      Additional Terms of Treatment of State of Arkansas-Department of Finance & Administration:**

Despite any other provision of this plan to the contrary, any failure by the Debtor to timely make any payment due under this plan, or to timely file and pay post-petition taxes shall constitute an event of default. In the event of Default, Creditor shall provide the Debtor and counsel with written notice of default and a fourteen (14) day opportunity to cure. Failure to

cure the default within 14 days after notice of the default shall authorize Creditor to utilize all available remedies to collect the entire amount of unpaid taxes owed by the Debtor (including those provided for within this plan) without approval of the court and without further notice to the Debtor or to the Debtor's counsel. The Debtor shall only be permitted three (3) defaults under the terms of this plan. If a fourth default occurs, Creditor shall be authorized to utilize all available remedies to collect the entire amount of unpaid taxes owed by the Debtor (including those provided for within this plan) without approval of the Court and without further notice to the Debtor or to the Debtor's counsel.

**M.    Retention of Properly Perfected Liens:**

Confirmation of this Plan will confirm the perfection of liens properly perfected pre-petition or provided by this Plan post-petition. Any such liens will remain perfected throughout the plan period until the Debtor has completed payments for the respective lien claimant's claim to the extent the claim is secured.

**N.    Vesting of Property & Effect of Confirmation**.

The Reorganizing Debtor shall continue to hold title to the assets in the bankruptcy estate, free and clear of all liens, claims, encumbrances, and equity interests, except as specifically provided in this Plan. Upon confirmation of this Plan the property dealt with this Plan is free and clear of all claims and interests of creditors and equity security holders of the Debtor except as otherwise provided for herein.

Respectfully submitted,

By:   **/s/Kyle Jack**
Managing Member, Rapid P & P LLC,
the Plan Proponent

9

**ADDENDUM 1**
**TO PLAN OF REORGANIZATION OF RAPID P&P, LLC:**
**PRIORITY CLAIMS**

**A.**   Benton County Tax Collector (Claim 1):

> -This claim came due post-petition and was paid.
> -No further treatment is accorded to Claim 1 in this Plan

**B.**   United States-Internal Revenue Service (Claim 26):

```
Amount of Claim:      $22,928.84
Amount Priority:      $442.72
Payment Interval:     One-time
Payment Period:       Upon the Effective Date.
Interest Rate:        N/A

Resulting Payment:    $442.72
```

**ADDENDUM 2**
**TO PLAN OF REORGANIZATION OF RAPID P&P, LLC:**
**CLASSES OF SECURED CLAIMS**

**Incorporation Provision for Secured Claims:**　　For each class of Secured Claims in this Addendum 2, the mortgages, liens, assignments, and security agreements and the descriptions of collateral appearing that appear in the Disclosure Statement for the classes of Secured Claims in this Addendum 2 are incorporated by reference into the treatment of the respective class.

**CLASS 1A.**　**Secured Claim 17** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

```
Impairment:          Impaired.
Date of
Obligation:          2019-09-15
Date of
Maturity:            2024-09-12
Collateral:          All inventory and all
                     accounts
Amount of Claim:     $149,595.61
Amount Secured:      $149,595.61
Payment Interval:    Monthly
Payment Period:      36 Months from 2024-09-12¹
Interest Rate:       6% (Contract Rate)

Resulting Payment:   $2,892.10
```

**CLASS 1B.**　**Secured Claim 18** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

```
Impairment:        Impaired.
Date of
Obligation:        2023-01-30
Date of
Maturity:          2023-12-15
```

---

[1] The adequate protection scheme per the Order for Adequate Protection [Document 37] will endure in the interim between the Effective Date and 21st August 2024.

11

```
               Collateral:    All inventory and all accounts;
                              all real estate; assignment of
                              rents.
               Amount of Claim:    $371,663.53
               Amount Secured:     $371,663.53
               Payment Interval:   Monthly
               Payment Period:     36 Months from 2024-05-01
               Amortization
               Period:        20 years
               Interest Rate: 8.959%
               Resulting
               Payment:       $ 2,979.53
               Balloon:       $365,954.55
```

**CLASS 1C.**   **Secured Claim 19** of United Bank to the extent allowed under §506 of the Bankruptcy Code:

```
               Impairment:    Impaired.
               Date of
               Obligation:    2017-09-15
               Date of
               Maturity:      2037-09-15
               Collateral:    1293 N Oriole Ave., Rogers, AR;
                              and 3945 and 3999 Rosebud Lane,
                              Springdale (formerly Bethel
                              Heights), AR
               Amount of Claim:    $259,491.43
               Amount Secured:     $259,491.43
               Payment Interval:   Monthly
               Payment Period:     163 Months, 14 days
               Interest Rate:      6.25% fixed (Contract Rate)

               Resulting Payment:  $2,366.12

          Sum of Claims 17, 18, and 19: $780,750.57
```

The several Resulting Payments set forth in the treatments of Class 1A, Class 1B, and Class 1C (collectively the "United Bank Claims") are the amortized payments for each such claim, but the extent of the liens of the United Bank Claims being secured by the Debtor's receivables and accounts fully secure the United Bank Claims and the Debtor shall pay United

Bank on account of its claims the amounts set out in the Agreed Order entered as Document 130 on 6th December 2023.

---

| | |
|---|---|
| **Class 2.** | The secured claim of **Flagstar Financial & Leasing LLC**[2] **(Claim 16)**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code. |

```
Impairment:          Impaired.
Date of
Obligation:          2021-03-17
Date of
Maturity:            2023-12-15
Collateral:          Durst RHO P5-350 Hybrid
                     Printer
Amount of Claim:     $332,348.84
Amount Secured:      $90,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate:       6%

Resulting Payment:   $1,739.95
```

---

| | |
|---|---|
| **Class 3.** | The secured claim of **US Bank NA d/b/a US Bank Equipment Finance**[3] **(Claim 15)**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code. |

```
Impairment:          Impaired.
Date of
Obligation:          2021-09-24
Date of
Maturity:            2026-09-24
Collateral:          AGFA Jeti Tauro H2500 6C W8
                     LED Printer
Amount of Claim:     $432,256.00
Amount Secured:      $200,000.00
Payment Interval:    Monthly
```

---

[2] Formerly known as Signature Financial LLC.
[3] Formerly known as ENGS Commercial Finance Co.

```
Payment Period:       60 Months
Interest Rate:        6%

Resulting Payment:  $3,866.56
```

**Class 4.**  The secured claim of **<u>Highland Capital Corporation[4] (Claim 6)</u>**, the extent allowed as a secured claim under §506 of the Bankruptcy Code.

```
Impairment:          Impaired.
Date of
Obligation:          2021-01-07
Date of
Maturity:            2026-09-24
Collateral:          Kongsberg C64
Amount of Claim:     $182,528.00
Amount Secured:      $100,000.00
Payment Interval:    Monthly
Payment Period:      60 Months
Interest Rate:       6.00%

Resulting Payment:  $1,933.28
```

**Class 5.**  Secured claim of **<u>Midland States Bank[5] (Claim 27)</u>**, to the extent allowed as a secured claim under §506 of the Bankruptcy Code.

```
Impairment:          Impaired.
Date of
Obligation:          2021-08-12
Date of
Maturity:            2026-12-04
Collateral:          2017 Highcon Eucluld 5C
                     Digital Cutting & Creasing
                     Machine
Amount of Claim:     $385,886.00
Amount Secured:      $320,000.00
Payment Interval:    Monthly
```

---

[4] Formerly known as Great Atlantic Finance Corporation.
[5] Formerly Liberty Capital Group, Inc.

14

```
Payment Period:      60 Months
Interest Rate:       6%

Resulting Payment:   $6,186.50
```

Sum of Secured Claims:      $2,113,769.41

**ADDENDUM 3**
**TO PLAN OF REORGANIZATION OF RAPID P&P, LLC:**
**ASSUMPTIONS AND REJECTIONS OF CONTRACTS AND LEASES**

References are to Schedule G found in the Disclosure Statement.

6.01A   Rejections:

```
G.2.1      24 Capital
G.2.4      Cedar Advance
G.2.6      Clearstone Fund LLC
G.2.9      Fundamental Capital
G.2.11     Prime Advance
G.2.12     Unique Funding LLC
G.2.13     Yes Capital
```

6.01B          Assumptions

```
G.2.2      6420 Bentonville Rogers LLC
G.2.5      CJDG Properties
G.2.6      Professional Business Systems
G.2.10     Mound Prairie Ranch LLC
```

```
All leases for which the Debtor is lessor.
```

### ADDENDUM 4
### TO PLAN OF REORGANIZATION OF RAPID P&P, LLC:
### GENERAL UNSECURED CLAIMS

**Class 6.**               The claims of this class are**:**

        a.    Fundamental Capital (Claim 2)
        b.    Clearstone Fund LLC (Claim 3)
        c.    Breakout Capital LLC (Claim 10)
        d.    Prime Advance LLC (Claim 20)
        e.    Yes Capital Group LLC (Claim 21)
        f.    Unique Funding Solutions, LLC (Claim 25)

Each of the claims in Class 6 is filed as a secured claim.

Each of these claims in Class 6 purports to be secured by the Debtor's accounts and receivables.

Each of the claims in Class 6 arose after the claims of Class 1A, 1B, and 1C.

The claims of Class 1A, 1B, and 1C are superior to those of all claims in Class 6, and notice of the claims of Class 1A, 1B, and 1C appeared in the public record prior to the existence of all claims of Class 6.

Therefore, all claims of Class 6 have no equity or value to attach to and are entirely unsecured.

Confirmation of this Plan will void, avoid, and render as a nullity all security agreements, notices, liens, and any other type or kind of encumbrance created by the Debtor's obligations to any claim of Class 6, and the claims of Class 6 shall be treated pursuant to Class 7 of this Plan.

References to Class 6 for distribution purposes is referred to in references to Class 7.

The sum of the claims of this class are $1,866,309.91.

17

**Class 7**          Unsecured Non-priority Claims

The claims of this class are unsecured or are the unsecured portions of secured claims in Class 6.

This class of claims is impaired.

The claims of this class total approximately **$3,837,773.40 including the claims of Class 6 and the unsecured portions of secured claims estimated to be $621,000.00**.

This class will be paid in annual *pro rata* installments, and no interest will accrue on the claims of this class.

Payment to this class will be made annually for the length of the Plan.  Payment will be made on the anniversary date of the Effective Date of this Plan as defined herein.

Payments to this class shall be pro rata.  The annual funding for payments to this class of claims is 5% of gross receipts each year of the Plan.  The accompanying Disclosure Statement contains projections of gross receipts.

The Debtor may apply to distributions to Class 7 the payments otherwise payable to classes of secured claims once a secured class is paid the full amount if its secured claim. A projection of these additional payments is in the Disclosure Statement.